IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02556-PAB-KAS

ANTHONY JOHN CHENOWETH,

    Plaintiff,

v.

BRANDON LANKFORD,

    Defendant.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion to Dismiss Amended Complaint at ECF No. 9 Under Rule 12(b)(6)** [#24][1] ("the Motion"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#26] in opposition to the Motion [#24], and Defendant filed a Reply [#32]. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion [#24] has been referred to the undersigned for a recommendation regarding disposition. *See* [#25]. The Court has reviewed the briefs, the entire docket, and the applicable law. For the reasons set forth below, the Court

---

[1] [#24]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation. Cited page numbers on these documents refer to the CM/ECF page numbers listed at the top of the documents, rather than to any internal page numbering created by the litigants.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

1

**RECOMMENDS** that the Motion [#24] be **GRANTED**.

## I. Background

Plaintiff was incarcerated at Buena Vista Correctional Facility ("BVCF") at all times relevant to this litigation. *See Am. Compl.* [#9] at 7.[3] On or about February 8, 2024, Plaintiff was housed in the minimum-restricted side of BVCF when, around 7:30 p.m., a fire broke out "next to his cell" and he woke up coughing on smoke.[4] *Id*. Plaintiff states that he is "ADA approved" for a hearing disability and did not hear any alarms, and none of the officers woke him to ensure he evacuated from the fire. *Id*. Once the fire was put out, all the inmates returned to their cells for the night. *Id*. Around 4:30 a.m. the next morning, Plaintiff alleges that he was having a hard time breathing and "declared a medical emergency." *Id*. The dayroom contacted Defendant Brandon Lake, who was the shift commander at the time. *Id*. Plaintiff asserts that, when he requested to see a nurse,

---

[3] In determining whether the Amended Complaint [#9] states a claim for relief, the Court views the allegations in a light most favorable to Plaintiff, as the non-moving party. *See Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019). The Court "may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal citation omitted). Here, Plaintiff attaches seven pages of his medical records stemming from the incident at issue, which the Court therefore may consider. *Am. Compl.* [#9] at 8-14. However, "factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997). The specific dates and timeline alleged by Plaintiff in the Amended Complaint [#9] are clearly contradicted by the medical records, including that the records all give dates in February *2024* rather than February *2023*, as Plaintiff alleges throughout his Statement of Claims. Where appropriate and necessary, therefore, the Court uses information from the medical records to correct or clarify Plaintiff's allegations.

[4] Plaintiff alleges that the fire occurred "[o]n or about 2/11/2023." *Am. Compl.* [#9] at 7. Based on his medical records, Plaintiff told medical personnel that he began having breathing issues three days before his February 12, 2024 hospital visit, and his allegations make clear that the fire occurred the night before his breathing problems began, which leads the Court to infer that the fire occurred the evening of February 8, 2024. *Id.* at 7, 9. The Court also notes that Plaintiff refers to the date of the fire as February 10, 2024, in his Response [#26]. Although the timeline of events has some relevance to adjudication of the Motion [#24], these conflicting dates are not dispositive of any issue.

2

Defendant told him the nurses were changing shifts, and that Plaintiff needed to go back to his cell. *Id*. Plaintiff alleges that he insisted on seeing a nurse at that moment, saying, "You can clearly see that I am having a hard time breathing by the way I am panting, can I please see a nurse to help me?" *Id*. Defendant responded by threatening to "throw [him] in the hole" if he did not return to his cell. *Id*. Plaintiff alleges that he requested one final time to see a nurse and asked Defendant if he was ok "risking [Plaintiff's] life" because it was an "inconvenient" time to see the nurses. *Id*. Plaintiff further alleges that Defendant replied, "Yes, now are you going to your cell or to the hole?" *Id*. Plaintiff believes that Defendant said this "sadistically and maliciously." *Id*. Plaintiff returned to his cell following this interaction. *Id*.

Plaintiff waited between 24 and 72 hours before declaring another medical emergency at 6:00 a.m. on or about February 12, 2024.[5] *Id*. Plaintiff alleges that he was still having a hard time breathing and was sent by the prison's nursing staff to the Emergency Room at the Heart of the Rockies Regional Medical Center in Salida, Colorado. *Id*. Plaintiff asserts he was diagnosed with carbon monoxide poisoning and had to spend several hours on oxygen. *Id*. The medical documents Plaintiff attached to his Amended Complaint [#9] indicate that Plaintiff had "mild" shortness of breath and was not coughing or wheezing. *Id*. at 9. The documents also state that Plaintiff indicated no

---

[5] Plaintiff alleges a compressed timeline wherein he again sought medical help the second morning after the fire. *Am. Compl.* [#9] at 7 (stating that the fire occurred "[o]n or about 2/11/2023" in the evening and that he "declared another medical emergency" the morning of February 13, 2023, after which he was taken to the hospital). Based on his medical records, Plaintiff was taken to the hospital on February 12, 2024, and his breathing problems had begun three days prior, so on or about February 9, 2024. *Id.* at 9. Thus, Plaintiff seems to have waited between one full day and three full days before requesting additional medical help.

3

respiratory distress, inspiration was painless, and his breath sounded normal. *Id*. at 10.[6] Plaintiff alleges he now becomes short of breath after doing anything physical and was told by medical staff he will have to deal with effects from the incident for the rest of his life. *Id*. at 7.

Plaintiff's claim is asserted under the Eighth Amendment. *Id*. at 4. Plaintiff states that Defendant was deliberately indifferent to his medical needs on the morning after the fire, causing him to suffer long term effects from carbon monoxide poisoning. *See id*. at 5-7. Plaintiff sues Defendant in his individual capacity and seeks $999,999.99 in damages. *Id*. at 2, 6. In the present Motion [#24], Defendant seeks dismissal of Plaintiff's claim pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Standard of Review

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their

---

[6] None of the medical documents provided by Plaintiff in the Amended Complaint [#9] indicate a carbon monoxide poisoning diagnosis or that any oxygen treatment was provided to Plaintiff. *See Am. Compl.* [#9] at 8-14. In fact, the only diagnosis listed on these documents is "dyspnea," i.e., shortness of breath. *Id.* at 12. Although medical staff listed several "possible cause[s]" for Plaintiff's shortness of breath, carbon monoxide poisoning does not appear on this list. *Id.* at 11. However, as Plaintiff notes, three pages of his medical records appear to be missing. *Id.* at 7. Thus, it is possible that information regarding carbon monoxide poisoning and oxygen treatment appears on those records instead.

4

veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III. Analysis

Defendant argues that he is entitled to qualified immunity. *Motion* [#24] at 8-9. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Est. of Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). When a defendant asserts qualified immunity, the plaintiff must demonstrate "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo v. City of Greenwood Village*, 739 F.3d 451, 460 (10th Cir. 2013). The Court may examine the two prongs of qualified immunity in either order. *Pearson v. Callahan*, 555 U.S. 223, 236

5

(2009).

Plaintiff alleges that Defendant violated his Eighth Amendment rights by being deliberately indifferent to his medical needs, which caused a delay in Plaintiff's access to medical care. *Am. Compl.* [#9] at 7. Defendant argues that the allegations put forward in the Amended Complaint [#9] do not rise to the level of an Eighth Amendment violation. *Motion* [#24] at 3.

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). The "deliberate indifference standard lies 'somewhere between the poles of negligence at one end and purpose or knowledge at the other.'" *Est. of Beauford v. Mesa County, Colorado*, 35 F.4th 1248, 1262 (10th Cir. 2022) (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). The deliberate indifference standard contains "both an objective and a subjective component." *Id*. (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The objective component requires that the deprivation to be "sufficiently serious." *Farmer*, 511 U.S. at 825. "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock*, 218 F.3d at 1209 (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

The subjective prong requires the plaintiff to establish that a prison official had a sufficiently culpable state of mind, i.e., that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

6

must also draw the inference." *Farmer*, 511 U.S. at 837. Notably, "[d]eliberate indifference requires more than a showing of simple or heightened negligence." *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003).

In cases where medical treatment is delayed, rather than denied altogether, an inmate must demonstrate causation by showing that "substantial harm" resulted from the alleged delay in treatment. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). Delays that have been found to violate the Eighth Amendment generally involve "'life-threatening situations and instances in which it is apparent that delay would exacerbate a prisoner's medical problems.'" *Hunt*, 199 F.3d at 1224 (quoting *Grant v. Bernalillo Cnty. Det. Ctr.*, 173 F.3d 863, 1999 WL 157415, at *2 (10th Cir. 1999) (Table)). Even when a delay in treatment is significant, if it does not cause substantial harm, the Eighth Amendment is not implicated. *See White v. State of Colorado*, 82 F.3d 364, 366 (10th Cir. 1996) (holding that a delay of up to two years did not amount to an Eighth Amendment claim in the context presented).

### A. Objective Component

To meet the objective component, Plaintiff must show that his medical need was sufficiently serious to require treatment from a physician or be so obvious to a lay person that medical treatment was required. *Sealock*, 218 F.3d at 1209. Plaintiff has alleged that he was told by medical personnel that his shortness of breath was caused by carbon monoxide poisoning and that he was required to be placed on oxygen for several hours. *Am. Compl.* [#9] at 7. Carbon monoxide poisoning is a serious condition that can have serious health effects. *See, e.g.*, *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1065 (10th Cir. 2016) (stating that the plaintiff "suffered injuries consistent with [carbon

7

monoxide] poisoning, and the record reflects at least the possibility she will have lingering physical injuries for many years, possibly the rest of her life"). Plaintiff alleges that he suffers long-term complications from the incident and becomes short of breath during physical exertion. *Am. Compl.* [#9] at 7. Because the Court finds that Plaintiff has alleged he had a serious medical condition, one that required treatment from a physician, Plaintiff has adequately alleged the objective component of his deliberate indifference claim under the Eighth Amendment.

B.   **Subjective Component**

Plaintiff must also allege sufficient facts to show that Defendant knew of, and disregarded, an excessive risk to inmate health and safety. *Est. of Beauford*, 35 F.4th at 1262-63. Based on Plaintiff's allegations, Defendant knew that Plaintiff was panting and having difficulty breathing when he requested medical care. *Am. Compl.* [#9] at 7. Plaintiff alleges that, after Defendant initially told him to go back to his cell, he said, "You can clearly see that I am having a hard time by the way I am panting, can I please see a nurse to help me?" *Id*. After Defendant repeated that Plaintiff needed to return to his cell, Plaintiff responded, "[S]ince its 'inconvenient' for a nurse to see me . . . you['re] going to throw me in the hole when my life is in danger because it is a shift change for the nurses?" *Id*. Plaintiff alleges that Defendant replied, "Yes, now are you going to your cell or the hole?" *Id*. Plaintiff believed that this was said maliciously and sadistically. *Id*. While these statements indicate that Defendant was aware of *a* risk to Plaintiff's health, Plaintiff has not alleged sufficient facts to indicate this risk was so serious and urgent as to require immediate medical attention.

Plaintiff's situation has many parallels to the plaintiff's in *Daniels v. Harper*, 640 F.

8

App'x 519, 521 (7th Cir. 2016). There, the incarcerated plaintiff told a nurse that he was having problems breathing due to his asthma and that he wanted treatment. *Id*. The nurse did not immediately summon treatment, and the plaintiff only received treatment after his symptoms worsened. *Id*. The plaintiff then sued the nurse for "act[ing] recklessly when she failed to summon medical assistance for him immediately when she saw him." *Id*. The Seventh Circuit affirmed summary judgment against the plaintiff, noting he had failed to meet the subjective component due to the absence of evidence that the nurse was deliberately indifferent to his medical needs, *i.e.*, that the nurse knew his condition was serious and urgent when she saw him. *Id*. (noting that the plaintiff "needed [but failed] to provide evidence suggesting that [the nurse] disregarded symptoms from which she could infer that he was having a severe attack" or evidence that "he displayed" symptoms of an asthma attack).

Here, according to the allegations, Plaintiff only told Defendant that he was having trouble breathing, and that Defendant could see as much from his panting. *Am. Compl.* [#9] at 7. Analogous to *Daniels*, where the record lacked evidence that the plaintiff exhibited symptoms of a severe asthma attack when he was seen by the defendant nurse, Plaintiff does not allege he exhibited any other symptoms of carbon monoxide poisoning when he interacted with Defendant. *Id*.; *Daniels*, 640 F. App'x at 521. Plaintiff was able to speak in coherent sentences, and he does not allege to have been suffering any other impairment. *Am. Compl.* [#9] at 7; *see, e.g., Pittman v. Bryant*, No. 23-cv-03030-DDD-KAS, 2025 WL 474938, at *4 (D. Colo. Feb. 11, 2025) (finding that the inmate plaintiff failed to plausibly allege that the correctional officer knew of and disregarded an excessive risk to the inmate based on an asthma attack where the

9

inmate could easily speak, perform actions, and was not in any obvious pain, as opposed to mere discomfort). Plaintiff also fails to plausibly allege that he needed immediate medical assistance; rather, Plaintiff allegedly chose not to seek medical care for a minimum of an additional 24 hours (and possibly as much as 72 hours) after Defendant ordered him to return to his cell. *Am. Compl.* [#9] at 7.

The subjective component requires "an *extraordinary* degree of neglect." *Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006) (emphasis added). Defendant's decision to send Plaintiff back to his cell when Plaintiff was not demonstrating a substantial need for immediate medical assistance is not an extraordinary degree of neglect. While Plaintiff has alleged sufficient facts that Defendant knew of *a* risk to his health, he has failed to allege facts that the risk would have appeared so substantial to Defendant that immediate medical care was required or that Defendant otherwise negligently or recklessly disregarded that risk.

Further, Plaintiff does not allege that the delay in the medical services caused him any additional harm that would have been mitigated by immediate medical attention. *See Am. Compl.* [#9] at 7. Plaintiff does not assert he made any further attempt to receive medical services for quite some time after his initial interaction with Defendant. *See id*. In fact, Plaintiff waited at least a full 24 hours (and possibly up to three days) after his interaction with Defendant before making another request for medical attention. *Id*. Plaintiff does not allege he was prevented by Defendant from seeking medical care during this time. *Id*. Plaintiff does not allege any facts that would indicate this delay of a day or several days was caused by Defendant.

Plaintiff has not alleged Defendant was a significant cause of the delay to his

10

Case No. 1:24-cv-02556-PAB-KAS   Document 35   filed 07/17/25   USDC Colorado
pg 11 of 12

medical services, and Plaintiff has failed to allege facts indicating Defendant as a lay person knowingly ignored a substantial and excessive risk to his health. Therefore, the Court finds that Plaintiff has failed to adequately allege the subjective component of an Eighth Amendment violation.

C.     **Conclusion on Eighth Amendment Violation**

While Plaintiff has adequately alleged the objective component, he has failed to adequately allege the subjective component, and thus the Court finds that Plaintiff has failed to state an Eighth Amendment claim against Defendant. Because Plaintiff has failed to state a claim that Defendant's actions violated his constitutional or statutory rights, Defendant is entitled to qualified immunity.[7]

## IV. Conclusion

Accordingly,

IT IS **RECOMMENDED** that Defendant's Motion [#24] be **GRANTED**.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73

---

[7] The Court notes that, even if Plaintiff had stated a viable deliberate indifference to medical claim, Defendant would still be entitled to qualified immunity, because the Court has found no legal authority demonstrating that Defendant violated clearly established law based on the present allegations.

F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: July 17, 2025

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge